## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHAEL COLEMAN, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO.   23-1469 |
| | : | |
| v. | : | |
| | : | |
| AID FOR FRIENDS D/B/A CARING FOR | : | |
| FRIENDS; VINCENT J. SCHIAVONE | : | |
| (INDIVIDUALLY); MATT GAMBINO | : | |
| (INDIVIDUALLY); STEVEN | : | |
| SCHIAVONE (INDIVIDUALLY); and | : | |
| BRAD MILLS (INDIVIDUALLY), | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Michael Coleman, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, Aid For Friends d/b/a Caring For Friends; Vincent J. Schiavone (Individually); Matt Gambino (Individually); Steven Schiavone (Individually); and Brad Mills (Individually), (collectively "Defendants") and upon information and belief avers the following:

## PARTIES

1.     Plaintiff, Michael Coleman ("Mr. Coleman" or "Plaintiff") is an adult individual who resides in the Commonwealth of Pennsylvania with an address for purposes of correspondence at 7300 Boyer Street, Philadelphia, PA 19119.

2.     Plaintiff, Michael Coleman is an African American male.

3.      Defendant, Aid for Friends d/b/a Caring for Friends (hereinafter "CFF") is a business organization existing under the laws of the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 12271 Townsend Rd, Philadelphia, PA 19154.

4.      Defendant, Vincent Schiavone (individually) (hereinafter "Defendant Schiavone") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 12271 Townsend Rd, Philadelphia, PA 19154.

5.      At all times material to this Complaint Defendant, Vincent Schiavone held supervisory authority over Plaintiff.  Defendant, Vincent Schiavone was employed by Defendants as the Chair and Chief Executive Officer and had the authority to take a tangible employment action against Plaintiff during his employment for Defendants.

6.      Defendant, Matt Gambino (individually) (hereinafter "Defendant Gambino") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 12271 Townsend Rd, Philadelphia, PA 19154.

7.      At all times material to this Complaint Defendant, Matt Gambino held supervisory authority over Plaintiff.  Defendant, Matt Gambino was employed by Defendants as the Managing Director of Programs, Partners and Volunteers and had the authority to take a tangible employment action against Plaintiff during his employment for Defendants.

8.      Defendant, Steven Schiavone (individually) (hereinafter "Defendant Steven Schiavone") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 12271 Townsend Rd, Philadelphia, PA 19154.

9.      At all times material to this Complaint Defendant, Steven Schiavone held supervisory authority over Plaintiff.  Defendant, Steven Schiavone was employed by Defendants

2

as the Managing Director and had the authority to take a tangible employment action against Plaintiff during his employment for Defendants.

10.    Defendant, Brad Mills (individually) (hereinafter "Defendant Mills") is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of correspondence at 12271 Townsend Rd, Philadelphia, PA 19154.

11.    At all times material to this Complaint Defendant Mills held supervisory authority over Plaintiff.  Defendant Mills was employed by Defendants as the Chief Operating Officer and had the authority to take a tangible employment action against Plaintiff during his employment for Defendants.

12.    At all times Defendants were Plaintiff's joint and sole employers.

## NATURE OF THE CASE

13.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); 42 U.S.C. § 1981, the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"); under the laws of the Commonwealth of Pennsylvania and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation which ultimately led to Plaintiff's unlawful termination by his employer.

## JURISDICTION AND VENUE

14.    This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981.

15.     The honorable Court has supplemental jurisdiction over the Commonwealth law Causes of Action.

16.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in Bucks County where the discrimination complained of occurred.

17.     On or around October 7, 2022, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.   Plaintiff filed his Charge of Discrimination at the EEOC based on the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.  Plaintiff's Charges of Discrimination was then cross-filed at the Pennsylvania Human Relations Commission.

18.     On March 17, 2023, the EEOC issued and sent to Plaintiff a Dismissal and Notice of Rights with respect to the Charge Plaintiff filed.

19.     This action is commenced within ninety (90) days of the date when the Dismissal and Notice of Rights was received by Plaintiff.

## MATERIAL FACTS

20.     In or around November 1, 2021, Defendant CFF hired Plaintiff, Michael Coleman as the Kitchen Production Manager and Supervisor.

21.     Plaintiff, Michael Coleman duties included organizing food orders for deliveries, prepping food for the volunteers to use to prepare deliveries, ordering kitchen and food supplies, scheduling staff members, and creating Defendant's Standardized Operating Procedures ("SOPS").

22.     At all times related to this employment for Defendants, Plaintiff executed the responsibilities of his employment with excellence, diligence, and satisfies his job requirements.

23.     At the beginning of his employment, Defendant Schiavone began to subject Plaintiff, Michael Coleman, to severe and pervasive discrimination and harassment due to his race.

24.     The discrimination and harassment were based upon Plaintiff's race and had the purpose and effect of unreasonably interfering with Plaintiff's work environment.

25.     Defendant Schiavone is a white, Caucasian male.

26.     Immediately upon Plaintiff's hire, Defendant Schiavone assigned Plaintiff derogatory, abusive names and referred to Plaintiff as "Booker T" and/or "Mr. T", both individuals are fictional Black males with large builds.

27.     In or around the beginning of February 2022, Defendant CFF hired Danielle Flynn as a Volunteer Coordinator. Ms. Flynn's duties included coordinating the volunteers to work alongside the kitchen staff to prepare meals for delivery.

28.     Ms. Flynn is a white, Caucasian female.

29.     Upon Ms. Flynn's hire, she immediately began to subject Plaintiff, Michael Coleman to severe and pervasive harassment and discrimination due to Plaintiff's race.

30.     Ms. Flynn would refuse to acknowledge Plaintiff Michael Coleman, who was the Kitchen Manager.

31.     Ms. Flynn would intentionally interfere with Plaintiff's ability to perform his job duties by refusing to talk to or acknowledge Plaintiff.

32.     Defendant, Ms. Flynn spoke about Plaintiff with abusive, disparaging comments on a regular basis.

33.     Defendant, Ms. Flynn subjected Plaintiff to ridicule and embarrassment by subjecting Plaintiff to insulting, abusive comments in front of other staff members.

34.     Ms. Flynn also subjected Plaintiff, Michael Coleman to stalking type conduct by following him around the facility and criticizing Plaintiff's work.

35.     Ms. Flynn did not subject similarly situated coworkers to this kind of harassment.

36.     Mr. Flynn also subjected Plaintiff to false statements designed to injure Plaintiff's reputation and interfere with Plaintiff's work environment.

37.     Ms. Flynn did not treat Plaintiff's similarly situated non-Black coworkers in such a manner.

38.     Plaintiff was singled out and subjected to severe and pervasive discrimination and harassment in the workplace due to Plaintiff's race and national origin.

39.     Plaintiff immediately engaged in protected activity and reported Ms. Flynn's discriminatory and harassing behavior to Defendant Schiavone.

40.     Despite Plaintiff's repeated complaints of discrimination and harassment, Defendants refused to take any action to investigate and remediate Plaintiff's reports.

41.     At all times these reports were protected activity such that Defendants discrimination and harassment thereafter constituted retaliation.

42.     Ms. Flynn began a campaign of discrimination and harassment directed at Plaintiff with the purpose and effect of interfering with Plaintiff's work assignments which led to Plaintiff's termination.

43.     Plaintiff had to contend with the ongoing discrimination and harassment on a daily basis.

44.     On multiple occasions, Ms. Flynn intentionally refused to notify Plaintiff of the number of youth and adults that were scheduled to volunteer in the kitchen.

45.     This information was vital, as there were safety procedures and protocols that needed to be adhered to in the kitchen (i.e. any individual under the age of 18 was not permitted to use kitchen knives).

46.     Similarly situated white, Caucasian employees were not subjected to this kind of harassment and treatment.

47.     Ms. Flynn intentionally did not register calendar the dates and times of volunteers for the kitchen, or she would intentionally register the wrong dates and times, to cause scheduling conflicts with other volunteer groups.

48.     Ms. Flynn's harassment and international interference with Plaintiff's job duties was intended to cause and caused interference with meetings that Plaintiff had scheduled with Defendant Schiavone.

49.     Whenever Plaintiff had to reschedule or cancel a meeting with Defendant Schiavone due to Ms. Flynn's intentionally harassment sabotage, Defendant Schiavone subjected Plaintiff to abusive, discriminatory comments and conduct including yelling, berating, and abusive language.

50.     Further, Ms. Flynn's conduct was observed by Plaintiff and other staff alike.

51.     Despite Plaintiff's reports of discrimination and harassment in the workplace, Defendant Schiavone did not take any disciplinary, investigative or ameliorative action whatsoever.

52.     Defendant, Ms. Flynn was verbally abusive toward Charing Party and ramped up her harassment after Plaintiff engaged in protected activity.

53.     On or around April 13, 2022, Defendant Schiavone called Plaintiff to a meeting to discuss the Plaintiff's ongoing complaints of Ms. Flynn's work performance.  Defendant Mills and Ms. Flynn were also present at the meeting.

54.     The meeting was intended to be about Ms. Flynn's ongoing conduct, however, Defendant Schiavone and Defendant Mills (Caucasian), spent the majority blaming Plaintiff for the harassment of Plaintiff.

55.     On April 27, 2022, Plaintiff was informed that Ms. Flynn had once refused to put a group of volunteers on the schedule and had not followed up with the group's leader to confirm their attendance in the month of May 2022.

56.     In or around July 1, 2022, Plaintiff and Defendant Mills hired Diana Ziman as a Cook.  Ms. Ziman reported directly under Plaintiff.

57.     Upon Ms. Ziman's hire, Ms. Flynn told Ms. Ziman that Plaintiff had no authority and Ms. Flynn and Defendant Schiavone were "buddy-buddy", so Ms. Ziman did not have to listen to or follow the instructions of Plaintiff.

58.     Ms. Flynn made this comment intending to cause and causing sabotage to Plaintiff, who was the Kitchen Production Manager and Supervisor.

59.     Ms. Flynn continued to interrupt Plaintiff's daily work through employees that Plaintiff was assigned to supervise and manage, and informed these employees that Plaintiff had no authority and could do nothing about it.

60.     Ms. Flynn times these interruptions to effect mass sabotage.

61.     Ms. Flynn's daily harassment also implicated health and safety issues as the food that Ms. Ziman was working with could not be left out for long periods of time.  Plaintiff explained and reported these safety issues and Defendants did nothing.

62.    Ms. Flynn intentionally caused delays in daily operations in ways that she could blame on Plaintiff.

63.    Plaintiff had to work more in order to repair the ongoing damage caused by Ms. Flynn.

64.    When Plaintiff asked Ms. Flynn to refrain from pulling Ms. Ziman away from her work, Ms. Flynn once again became abusive toward Plaintiff and subjected Plaintiff to verbal abuse and discrimination and harassment in the workplace.

65.    Plaintiff reported Ms. Flynn's conduct to Defendant Schiavone.

66.    Nothing was done and Plaintiff continued to be subjected to discrimination and harassment in the workplace.

67.    On July 27, 2022, Defendant Schiavone called Defendant Gambino, Ms. Flynn, and Plaintiff into a meeting at his office.

68.    At that meeting, Plaintiff, informed Defendants Schiavone and Gambino that Ms. Flynn was not treating Plaintiff with professionalism and respect.

69.    Further Plaintiff stated state that the reason for Ms. Flynn's conduct was based on discrimination and race.

70.    Following the meeting Defendant Schiavone stated that he would investigate Plaintiff's complaints.

71.    On August 1, 2022, Defendant Schiavone called Plaintiff into a meeting. Defendant Schiavone had Plaintiff escorted to the office by Defendant Steven Schiavone and a coworker, Abdellah Abdul Qawi.

72.    Present at the meeting were Defendants Schiavone, Steven Schiavone, Gambino and Mr. Qawi.

73.   At the meeting, Defendant Schiavone terminated Plaintiff Michael Coleman's employment with Defendants.

74.   The reason for the termination is race and retaliation and any other reason offered by Defendants is mere pretext.

75.   At no time did Defendants even interview Plaintiff with respect to Plaintiff's allegations with an eye to investigation and remediation.

76.   The stated reason for Plaintiff's termination is pure pretext.

77.   Throughout Plaintiff's employment never written up for any of the issues which led to his termination.

78.   Defendants ordered Plaintiff to report to Defendant Schiavone's office where Defendants terminated Plaintiff's employment without investigation or consideration for the truth, or for remediating discrimination and harassment.

79.   Defendants fired Plaintiff due to his race and national origin and due to retaliation.

80.   As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

81.   Defendants unlawfully terminated Plaintiff, due to Plaintiff's race, color and national origin and in retaliation for Plaintiff's reports discrimination and harassment in the workplace.

82.   During Plaintiff's employment, Plaintiff was subjected to severe and pervasive discrimination and harassment.   Accordingly, Plaintiff was subjected to a hostile work environment.

83.   As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries with physical manifestations.

84.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.  Plaintiff experienced physical effects related to the emotional distress to which Plaintiff suffered as a result of Defendants discrimination, harassment, hostile work environment and retaliation.

85.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation to which such employment entailed.

86.     Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

87.     Plaintiff has further experienced severe emotional and physical distress.

88.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

89.     Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

90.     At all times material Defendants refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

91.     Defendants discriminatory conduct was severe and pervasive, and created a hostile work environment for Plaintiff.

92.     The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff during Plaintiff's employment for Defendants.

93.     Plaintiff claims a pattern and practice of discrimination, claims continuing violations, and makes all claims herein under the continuing violations doctrine.

94.     Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

95.     Plaintiff claims unlawful discharge and seeks reinstatement.

## COUNT I
## UNDER FEDERAL LAW
## S.C. SECTION 1981
### (against all named Defendants)

96.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

97.    42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

98.    Plaintiff, as a member of the Arab race, was discriminated against by Defendants because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

99.    Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

100.   Plaintiff claims hostile work environment under 42 U.S.C. Section 1981. The discrimination and harassment due to Plaintiff's race was severe and pervasive and interfered with Plaintiff's work environment.

101.    The discriminatory conduct was severe and pervasive both objectively and subjectively.

102.   Plaintiff also claims disparate treatment under 42 U.S.C. Section 1981.

103.   Plaintiff, Plaintiff was subjected to discrimination based on race which led to the adverse employment actions described herein.

104.   Defendants have no legitimate nondiscriminatory reason for the disparate treatment to which Plaintiff was subjected.

105.   Plaintiff, Plaintiff was subjected to violations of Section 1981, when Defendants subjected Plaintiff, Plaintiff to disparate treatment, hostile work environment and retaliation.

106.   Plaintiff, Plaintiff's claims under Section 1981 are based on the fact that Plaintiff, Plaintiff belongs to a racial minority.

107.   At all times related to this civil action, Plaintiff, Plaintiff was and remains a member of the African American race.

108.   During the course and scope of Plaintiff, Plaintiff's employment, Defendants intentionally subjected Plaintiff, Plaintiff to discrimination and harassment in the workplace because of Plaintiff, Plaintiff's race.

109.   Plaintiff was subjected to continuous conduct race-based, and comments described within this civil action complaint in detail that were specifically and intentionally based on Plaintiff's race.

110.   The race-based discrimination and harassment in the workplace to which Plaintiff was subjected occurred with severity and frequency such that Plaintiff was subjected to a hostile work environment due to the severity and pervasiveness of the abusive, race-based discriminatory comments and conduct.

111.   The intentional discrimination and harassment in the workplace that was based on Plaintiff's race had the purpose and effect of unreasonably interfering with Plaintiff's work

13

environment such that Defendants materially changed the terms and conditions of Plaintiff's work environment.

112.    The discrimination of Plaintiff, because of Plaintiff's race led to Plaintiff being subjected to loss of pay.

113.    The discrimination in the workplace to which Plaintiff was subjected because of his race led to Plaintiff losing benefits.

114.    The discrimination in the workplace to which Plaintiff was subjected because of his race led to Plaintiff being deprived material aspects of Plaintiff's employment that other employees who were not members of Plaintiff's race received.

115.    Plaintiff was singled out and subjected to discrimination because of his race and Plaintiff has been intentionally harmed by this discrimination such that Plaintiff has been deprived money that Plaintiff should have been paid but for the intentional discrimination.

116.    Plaintiff has been deprived raises that Plaintiff should have received but for the discrimination.

117.    Plaintiff has been deprived benefits that Plaintiff would have received but for the discrimination.

118.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by disparate, race-based treatment.

119.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by the ongoing, severe and pervasive hostile work environment.

120.    Plaintiff's claims under Section 1981 are to redress the injuries to which Plaintiff has been subjected by Defendants including injuries caused by Defendants' retaliation which

continues to the present and includes retaliation based on Plaintiff asserting his rights to be free of a workplace that is permeated with race-based discrimination and harassment in the workplace.

121.   Congress enacted the Civil Rights Act of 1991, which was designed to supersede Patterson, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383, 124 S.Ct. 1836, 158 L.Ed.2d 645, by explicitly defining § 1981's scope to include post-contract-formation conduct, § 1981(b). (4) Since 1991, the Federal Courts of Appeals have uniformly interpreted § 1981 as encompassing retaliation actions. Sullivan, as interpreted by Jackson, as well as a long line of related cases where the Court construes §§ 1981 and 1982 similarly, lead to the conclusion that the view that § 1981 encompasses retaliation claims is well embedded in the law. Stare decisis considerations strongly support the Court's adherence to that view. Such considerations impose a considerable burden on those who would seek a different interpretation that would necessarily unsettle many Court precedents. Pp. 1954 – 1958. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 128 S. Ct. 1951, 1953, 170 L. Ed. 2d 864 (2008).

122.   42 U.S.C. § 1981 and specifically § 1981(a), and subsection, (b), defines what it means to "make and enforce contracts" under the law: 'Make and enforce contracts' defined: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

123.   Plaintiff's claims under § 1981 are based on Defendants' race-based conduct and comments and race-based discrimination that violated Plaintiff's employment contract through ongoing, continuous harassment and failing to treat Plaintiff in the same manner

to which Plaintiff's similarly situated coworkers who were not members of Plaintiff's race were treated, which includes lost benefits, lost pay, lost promotions, and other losses which are identified herein.

124. The Supreme Court of the United States has concluded that, "Among other things, it would "ensure that Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." Ibid. (emphasis added). … It added that the protections that subsection (b) provided, in "the context of employment discrimination ... would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, retaliation, and hiring." Id., at 92 *451 emphasis added). It also said that the new law "would restore rights to sue for such retaliatory conduct." Id., at 93, n. 92. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 450–51, 128 S. Ct. 1951, 1957, 170 L. Ed. 2d 864 (2008).

125. Accordingly, Plaintiff's claims under Section 1981 are based on Defendants' intentional harassment of Plaintiff due to Plaintiff's race and Plaintiff suffering damages due to lost pay, lost benefits and due to Defendants' retaliation because Plaintiff engaged in protected activity and has attempted to vindicate his rights under the law.

126. Defendants specifically singled Plaintiff out because of Plaintiff's race and subjected Plaintiff to severe and pervasive race-based comments which were designed to be abusive and to subject Plaintiff to an abusive working environment.

127. Plaintiff reported the discrimination and was subjected to a ratcheting up of the race-based discrimination which at all times was intentional discrimination that was directly related to Plaintiff's race.

128. Plaintiff has been singled out and treated differently than other employees in the same position as Plaintiff and were not members of Plaintiff's race.

129.    This includes Defendants' refusal to increase Plaintiff's compensation in terms of Plaintiff's hourly pay.

130.    This includes Defendants refusal to provide Plaintiff with benefits that other employees who are not members of Plaintiff's race receive.

131.    This includes locking Plaintiff's rate of pay and Defendants' refusal to pay Plaintiff what other employees are paid who are not members of Plaintiff's race.

132.    This includes subjecting Plaintiff to material changes in the terms and conditions of Plaintiff's employment.

**COUNT II**
**DISCRIMINATION UNDER TITLE VII**
**HOSTILE WORK ENVIRIONMENT AN DISPARATE TREATMENT**
**(against corporate Defendants only)**

133.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

134.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race

135.    SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

136.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race.

**COUNT III**
**RETALIATION UNDER TITLE VII**
**(against corporate Defendants only)**

137.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

138.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

139.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, economic losses, compensatory damages, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

BY: */s/Seth D. Carson*
Seth D. Carson, Esq.
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com
*Attorney for Plaintiff*

DATED:  April 17, 2023